|||
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |
| HOLLY RIGGS, E.R., and J.R., | Case No.: 2:17-cv-02627-APG-VCF |
| Plaintiffs | **Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment** |
| v. | |
| NYE COUNTY, et al., | [ECF Nos. 36, 38] |
| Defendants | |

Plaintiff Holly Riggs was arrested for child neglect after leaving her two minor children, plaintiffs E.R. and J.R., in a splash pool for a few minutes while she went inside her house. She sues Nye County and several Nye County Sheriff's Office employees for various claims under federal and state law. She generally asserts that the defendants lacked probable cause to arrest her, disrupted familial relationships by arresting her while her daughter was in a perilous medical condition, and caused extreme emotional distress. Defendants Nye County, Sheriff Sharon Wehrly, Under Sheriff Brent Moody, Lieutenant Michael Eisenloffel, Sergeant Corey Fowles, and Deputy Richard Deutch move for summary judgment on all claims. The plaintiffs also move for summary judgment on all claims. I grant the defendants' motion and deny the plaintiffs' motion.

**I. BACKGROUND**

This lawsuit arises out of an incident in September 2015 at Riggs' home in Pahrump. ECF No. 37-4 at 5-6. Riggs and her two children, E.R. and J.R., went in their backyard to play in a splash pool. *Id.* at 7. At the time, E.R. was 18 months old and J.R. was just about to turn four years old. *Id.* at 8. Riggs went back inside the house for a few minutes to check on a cake she was baking. *Id.* at 7, 8. The children remained by the pool. *Id.* at 7. Riggs went into the

master bedroom and looked out the window to check on the children. *Id.* at 8. According to Riggs, she went to this particular window because it gave the best view to where the children were. *Id.*

When Riggs looked out the window, she saw her son holding her daughter in the splash pool. *Id.* E.R.'s arms were limp and her head was rolled back. *Id.* Riggs knocked on the window and J.R. dropped E.R. into the water. *Id.* E.R. was not moving. *Id.* Riggs ran outside and asked her son what happened, and he said he did not know. *Id.* Riggs carried E.R. into the house and called 911. *Id.* at 8-9. While waiting for paramedics to arrive, Riggs pushed on E.R.'s stomach and swept food and vomit out of E.R.'s mouth. *Id.* at 9. E.R. regained consciousness and started breathing just before paramedics arrived. *Id.*

In addition to the paramedics, Nye County Sheriff's Office personnel responded to the emergency call. ECF No. 37-2 at 5. First on the scene were Deputy James Brainard and Sergeant David Boruchowitz. *Id.* As they entered the home, they saw Riggs on the living room floor with her daughter. *Id.* at 6. While paramedics were attending to E.R., Boruchowitz spoke to J.R., who told him that Riggs was sleeping while the children were in the pool. *Id.* at 6. Boruchowitz notified Child Protective Services and Brainard notified the detective unit to follow up in case E.R.'s condition worsened. *Id.*

Paramedics transferred E.R. to Desert View Hospital. *Id.* at 6. At the hospital, Riggs filled out a voluntary statement. *Id.* at 10. Defendants Corey Fowles and Michael Eisenloffel, both Detectives, arrived at the hospital to conduct a child neglect investigation. ECF No. 37-3 at 4-5. Fowles interviewed Riggs and she told him that she was baking a cake and heard the timer go off, so she left the children by the pool and went inside. *Id.* at 5. Riggs told Fowles that she was in the house up to three minutes. *Id.* at 22. Boruchowitz later told Fowles that J.R. had told

him that Riggs was sleeping. *Id.* at 6, 22. Boruchowitz also told Fowles that Riggs told the fire department personnel that she was doing dishes at the time of the incident. *Id.* at 7, 22. Fowles also spoke to the emergency room physician, who told him that E.R. had an inflamed trachea and lungs due to water inhalation. *Id.* at 8, 22.

Riggs' husband came to the hospital. ECF No. 37-4 at 13. He and Riggs arranged for some family friends to watch J.R. while they attended to E.R.'s situation. *Id.*

E.R.'s oxygen level was low and her heart rate was high, so medical personnel told Riggs they wanted to take E.R. by ambulance to a hospital in Las Vegas. *Id.* When E.R.'s condition worsened, medical personnel intubated her and decided to fly her to Las Vegas by helicopter. *Id.*

As Riggs and her husband were heading to the helicopter, Fowles and Eisenloffel questioned Riggs again. *Id.* at 14-15. After speaking with Riggs further, Eisenloffel decided to arrest her for child neglect. ECF Nos. 37-3 at 10; 37-8 at 8-9, 11. Fowles placed her into custody. ECF Nos. 37-3 at 11; ECF No. 37-4 at 15. Riggs' husband got on the helicopter and accompanied E.R. to the hospital in Las Vegas. ECF No. 37-4 at 16.

Riggs spent approximately nine hours in jail. *Id.* During that time, her father-in-law retrieved J.R. from the family friends and bailed Riggs out of jail. *Id.* The three of them then went to Las Vegas. *Id.* E.R. fully recovered from the incident. *Id.* at 20. The district attorney's office later declined to prosecute Riggs. ECF No. 37-8 at 11.

Based on these facts, the plaintiffs sue Nye County, Nye County Sheriff Sharon Wehrly, Under Sheriff Brent Moody, Eisenloffel, Fowles, and Deputy Richard Deutch.[1] The plaintiffs assert a federal claim under 42 U.S.C. § 1983, alleging that all of the defendants violated (1) Riggs' Fourth Amendment right to be free from an unreasonable seizure and (2) her and her

---

[1] Brainard and Boruchowitz were defendants in this case but were dismissed. ECF Nos. 30; 31.

3

children's Fourteenth Amendment rights to familial relationships.[2] They also assert against all defendants state law claims for malicious prosecution, false imprisonment and false arrest, intentional infliction of emotional distress, and civil conspiracy. Finally, they assert a negligent supervision and training claim against Wehrly and allege Nye County is vicariously liable for Wehrly's negligence.

The defendants move for summary judgment on a variety of grounds, but mainly on the basis that the detectives had probable cause to arrest Riggs. They also assert they are entitled to qualified immunity for the federal claims and discretionary function immunity for the state law claims. The plaintiffs move for summary judgment as well, arguing the defendants lacked probable cause for the arrest, and the decision to arrest Riggs as her child was being airlifted to Las Vegas for medical treatment shocks the conscience.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

---

[2] The complaint also mentions the Fifth and Eighth Amendments, but those do not apply to the facts alleged here. *See Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (stating "the Fifth Amendment's due process clause only applies to the federal government"); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) ("The Eighth Amendment's prohibition of 'cruel and unusual punishments applies only after conviction and sentence." (quotation omitted)).

4

burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Defendants Moody and Deutch**

Defendants Moody and Deutch move for judgment on the ground that there is no evidence they participated in the events at issue. The plaintiffs do not respond to this argument nor is there any evidence before me that even mentions these two defendants. I therefore grant their motion as to all claims.

**B. 42 U.S.C. § 1983**

To establish liability under § 1983, a plaintiff must show the violation of a right secured by the Constitution and laws of the United States and must show that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The defendants do not contest that they acted under color of law. Thus, the dispute centers on whether the defendants violated the plaintiffs' constitutional rights. The parties also dispute whether the defendants are entitled to qualified immunity.

    1. Fourth Amendment

Riggs alleges that the defendants lacked probable cause to arrest her and so her arrest and subsequent detention amount to an unreasonable seizure under the Fourth Amendment. "The Fourth Amendment requires police officers to have probable cause before making a warrantless

5

arrest." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1264 (9th Cir. 2012) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 877-78 (1986)). The inquiry is based on the "facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This may include objectively reasonable information provided by other law enforcement personnel. *Green v. City & Cty. of S.F.*, 751 F.3d 1039, 1045 (9th Cir. 2014). The inquiry is objective. *Devenpeck*, 543 U.S. at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Thus, the officer's subjective belief about whether or not probable cause existed is irrelevant. *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 n.20 (9th Cir. 2009) (stating that the officer "expressed doubt as to the existence of probable cause, but his subjective beliefs are irrelevant; the standard is objective").

In civil cases, the existence of probable cause generally is a fact question for the jury. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). However, if there is no genuine issue of fact even when viewing the evidence in the light most favorable to the nonmoving party, then "summary judgment is appropriate if no reasonable jury could find an absence of probable cause under the facts." *Id.*

Even viewing the facts in the light most favorable to the plaintiffs, no reasonable jury could find the detectives lacked probable cause for the arrest. Riggs told the officers she left her 18-month-old and four-year-old children unsupervised at a splash pool while she went inside the house, and during that time E.R. suffered serious injury from water inhalation. Nevada Revised Statutes § 200.508(2) makes it a crime for a "person who is responsible for the safety or welfare of a child" to "permit[] or allow[] that child to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect."[3] A reasonable officer could have concluded he had probable cause to arrest Riggs for child neglect. The defendants were at worst reasonably mistaken about whether probable cause supported the arrest, and thus would be entitled to qualified immunity. *See Rodis v. City, Cty. of San Francisco*, 558 F.3d 964, 971 (9th Cir. 2009). Consequently, I grant the defendants' motion and deny the plaintiffs' motion on the Fourth Amendment claim.

2. Fourteenth Amendment

The plaintiffs allege the arresting officers engaged in conscience-shocking behavior in violation of the plaintiffs' Fourteenth Amendment rights to familial relationships because the detectives arrested Riggs as she was about to accompany E.R. on the helicopter while E.R. was in medical distress. The defendants are entitled to qualified immunity on this claim because the

---

[3] *See also* Nev. Rev. Stat. § 200.508(4)(a) (defining abuse or neglect as, among other things, "negligent treatment . . . of a child under the age of 18 years, as set forth in paragraph (d) and NRS . . . 432B.140 . . . under circumstances which indicate that the child's health or welfare is harmed or threatened with harm"); Nev. Rev. Stat. § 432B.140 ("Negligent treatment . . . of a child occurs if a child . . . is without proper care, control or supervision . . . because of the faults or habits of the person responsible for the welfare of the child or the neglect or refusal of the person to provide them when able to do so").

plaintiffs do not identify any clearly established law that would have put the defendants on notice that their conduct was unlawful.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling on a qualified immunity defense, I make a two-pronged inquiry into whether (1) the defendant violated the plaintiff's constitutional right and (2) whether that right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). I may consider these two prongs in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

I view the facts in the light most favorable to the party asserting the injury and consider whether the facts show the defendant's conduct violated a constitutional right. *Sorrels*, 290 F.3d at 969. If the plaintiff makes this showing, I also determine whether that right was clearly established. *Id.* A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I make this inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 200. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. *Wilkins*, 350 F.3d at 955.

The plaintiff bears the burden of showing that the right at issue was clearly established. *Sorrels*, 290 F.3d at 969. But a plaintiff need not establish that a court previously declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful. *Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997). Additionally, a plaintiff may meet his burden on the clearly established prong by showing the defendant's conduct was

"such a far cry from what any reasonable . . . official could have believed was legal that the defendants knew or should have known they were breaking the law." *Sorrels*, 290 F.3d at 971.

Even assuming a parent has a right not to be arrested while her child is in medical peril where a later arrest would have sufficed to protect the public, the plaintiffs fail to meet their burden of showing such a right was clearly established. The plaintiffs cite *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979), but that case is not on point. There, three minor children were riding in a car with their uncle when the police stopped and arrested the uncle. *White*, 592 F.2d at 382. "Although the uncle pleaded with the officers to take the children to the police station or phone booth so that they could contact their parents, the defendant officers refused to provide any such aid." *Id.* "Instead, they left all three children in an abandoned automobile on the side of the road," where the children were exposed to cold and forced to "cross eight lanes of traffic and wander on the freeway at night in search of a telephone." *Id.* The Seventh Circuit held this conduct shocked the conscience. *Id.* at 385-86.

Here, E.R.'s medical condition was serious, but she was not left to fend for herself. She was in the care of medical personnel and her father accompanied her on the helicopter flight to the Las Vegas hospital. J.R. was with family friends and then with his grandfather.

The plaintiffs do not cite any other cases that would have put these officers on notice that their conduct was unlawful under the circumstances. They therefore have not met their burden of showing the alleged right at issue was clearly established. Because the officers are entitled to qualified immunity, I grant the defendants' motion and deny the plaintiffs' motion as to this claim.

/ / / /

/ / / /

**B. State Law Claims**

　　　　1. Malicious Prosecution, False Imprisonment, and False Arrest

The plaintiffs' claims for malicious prosecution, false imprisonment, and false arrest each require as an element a lack of probable cause. *See LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (malicious prosecution); *Marschall v. City of Carson*, 464 P.2d 494, 497 (Nev. 1970) (stating that where false imprisonment is based on a false arrest, there must be a lack of legal cause or justification); Nev. Rev. Stat. § 171.123(1) ("Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime."). As discussed above, the defendants had probable cause to arrest Riggs, so these claims fail as a matter of law.

Moreover, the defendants would be entitled to discretionary immunity under Nevada law for the arrest and subsequent detention because the decisions to arrest and detain Riggs were discretionary and based on policy considerations of enforcing the criminal laws. *See Gonzalez v. Las Vegas Metro. Police Dep't*, No. 61120, 2013 WL 7158415, at *2-3 (Nev. Nov. 21, 2013) (holding that an officer's decision to arrest based on a matched description in a facially valid warrant was entitled to discretionary immunity); *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007) (en banc) (holding that discretionary immunity applies if the officer's decision "(1) involve[d] an element of individual judgment or choice and (2) [was] based on considerations of social, economic, or political policy"). I therefore grant the defendants' motion and deny the plaintiffs' motion as to the malicious prosecution, false imprisonment, and false arrest claims.

　　　　2. Civil Conspiracy

"The elements of civil conspiracy are: (a) a combination of two or more persons; (b) who, by some concerted action; (c) intend to accomplish some unlawful objective; (d) for the purpose

of harming others; (e) which results in damage." *Collins v. Union Fed. Savings & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983). The plaintiffs have not pointed to evidence in the record that the defendants intended to accomplish some unlawful objective for the purpose of harming Riggs or her children. I therefore grant the defendants' motion and deny the plaintiffs' motion as to the civil conspiracy claim.

### 3. Intentional Infliction of Emotional Distress

Under Nevada law, an intentional infliction of emotional distress (IIED) claim requires three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). However, "persons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." *Id.* (omission and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980). A police officer's conduct may rise to the level of extreme and outrageous when he engages in an "extreme abuse" of his position. Restatement (Second) of Torts § 46, cmts. The comments to the Restatement offer examples of when a police officer's conduct may be so outrageous as to support an IIED

11

claim, such as where the officer attempts to extort money by a threat of arrest or attempts to extort a confession by falsely telling the accused her child has been injured in an accident and she cannot go to the hospital until she confesses. "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

The defendants' conduct here was not extreme and outrageous as a matter of law. The detectives had probable cause to arrest Riggs for child neglect. Even considering the decision to arrest her as she was heading to the helicopter, the defendants' behavior does not rise to the level of an extreme abuse of power sufficient to support an IIED claim. I therefore grant the defendants' motion and deny the plaintiffs' motion as to this claim.

### 4. Negligent Supervision and Training

The plaintiffs allege Sheriff Wehrly failed to properly train and supervise the other defendants. They also contend Nye County is vicariously liable for Wehrly's negligence.

Nevada Revised Statutes § 41.032 sets forth exceptions to Nevada's general waiver of sovereign immunity. Pursuant to § 41.032(2), no action may be brought against a state officer or employee or any state agency or political subdivision that is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused."

Nevada looks to federal decisional law on the Federal Tort Claims Act for guidance on what type of conduct discretionary immunity protects. *Martinez*, 168 P.3d at 729. The United

States Court of Appeals for the Ninth Circuit and other circuits have held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing cases). Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently holds training and supervision are acts entitled to such immunity, Wehrly is entitled to discretionary immunity on this claim. Moreover, the plaintiffs do not point to any evidence about what training Wehrly provided and they do not explain why that training was deficient or how that deficiency caused a constitutional violation in this case. Because the plaintiffs have not raised a genuine dispute about Wehrly's alleged negligence, Nye County is also entitled to judgment as a matter of law on the plaintiffs' vicarious liability theory. I therefore grant the defendants' motion and deny the plaintiffs' motion on this claim.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion for summary judgment **(ECF No. 38) is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **(ECF No. 36) is GRANTED**. The clerk of court is instructed to enter judgment in favor of defendants Nye County, Sheriff Sharon Wehrly, Under Sheriff Brent Moody, Lieutenant Michael Eisenloffel, Sergeant Corey Fowles, and Deputy Richard Deutch and against plaintiffs Holly Riggs, E.R., and J.R.

DATED this 21st day of March, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE